# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| IN RE:<br><br>AVEUM INVESTMENTS, LLC,<br><br>Debtor. | CHAPTER 7<br><br>CASE NO. 19-60303-jwc |

## MOTION FOR APPROVAL AND
## PAYMENT OF ADMINISTRATIVE EXPENSES

**COMES NOW** Cathy L. Scarver, the Chapter 7 Trustee ("Trustee") for the estate ("Estate") of the above stated debtor ("Debtor"), and files this *Motion for Approval and Payment of Administrative Expenses* ("Motion"), and respectfully represents:

### Jurisdiction and Venue

1.  This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§157 and 1334 and the Standing Order of Reference of the United States Bankruptcy Court for the Northern District of Georgia. Venue is proper in this Court under 28 U.S.C. § 1408 and 1409.

### Background

2.  Debtor filed a Petition under Chapter 11 of the U.S. Bankruptcy Code on July 1, 2019 ("Petition Date").

3.  After the case was converted from Chapter 11 to Chapter 7, upon motion of the United States Trustee, Trustee was appointed as Chapter 7 Trustee of the Estate on September 3, 2019, and continues in such capacity.

4.  In 2018, prior to the Petition Date, a fire occurred in one of two office

buildings owned by Debtor, located at 2245 and 2227 Godby Rd., College Park, Georgia ("Property"), related to which Debtor filed a claim with its insurance company.

5. Debtor's principal testified at the Chapter 7 Meeting of Creditors to the following: After processing the claim, the insurance company mailed a lump sum check to Debtor. The check was made jointly payable to: a) Debtor; b) Velocity Commercial Capital Loan Trust 2018-1 ("Velocity"), the creditor holding the first priority deed to secure debt related to the Property; c) NationStar, the servicer for Velocity; and d) Millennium Investment Group, LLC ("Millennium")[1], the creditor holding the second priority deed to secure debt related to the Property. Debtor endorsed the check, obtained Millennium's endorsement in person, and then overnighted the check to Velocity. Velocity then obtained NationStar's endorsement. After forwarding $195,000 to Debtor for reimbursement of alleged expenses already paid by Debtor related to the rehabilitation of the Property, Velocity deposited the balance, an amount not less than $247,809.93, into a suspense account ("Suspense Funds").

6. As the Court is aware, Debtor received $195,000 in insurance proceeds in April 2019 from Velocity. Debtor's principal then caused $170,000 to be wired out of Debtor's bank account related to an alleged investment.[2] To date, said funds have not been returned to Debtor or the Trustee.

---

[1] Due to Millennium's second priority deed to secure debt, it likewise has an interest in the insurance proceeds.
[2] Debtor's principal's inability to return the funds to Debtor's bank account was part of the cause for conversion of the case to Chapter 7.

Page -2-

7. As evidenced by Debtor's August 2019 operating report, little to no funds remain in Debtor's bank account, leaving the Trustee with insufficient funds to handle issues related to the Property.

8. Pursuant to Velocity's proof of claim, its pre-petition claim totals $530,914.17. *See* Claim No. 1.

9. According to the appraisal obtained by Debtor in May 2019, the value of the Property is approximately $1,450,000 ("as is" with the fire damage). Further, the Trustee's realtor estimates the Property to be worth $2,000,000, or more, "as is" with the fire damage.

10. The Trustee is currently trying to market the Property for sale to realize the full value of the Property for the benefit of all creditors in the case.[3]

11. The Trustee has encountered a number of issues related to the Property, including but not limited to the inability to restore power to the Property because the electric bill was in the name of a non-debtor entity. The lack of electricity is not only an issue due to the weather; it has also hampered the Trustee's ability to properly prepare the Property for sale and to show the Property to prospective purchasers.

12. Due to the oversecured nature of Velocity's interest in the Property, the Trustee has made demand on Velocity for the return of the Suspense Funds, which would enable her to maintain and properly market the Property. To date, Velocity has refused to turnover the Suspense Funds to the Trustee.

13. As the temperatures dip, the Trustee's need for the Suspense Funds to restore

---

[3] Total pre-petition claims filed in the case are $1,035,504.06. Total scheduled pre-petition claims are $967,000.00.

electricity to the Property has become an exigent. Velocity's failure to turnover the Suspense Funds to the Trustee so that she may properly maintain and market the Property is detrimental not only to Velocity's own interests but also to the interests of the Estate, all creditors in this case, and Debtor.

14. The Trustee has filed a *Motion for Turnover and/or, in the Alternative, Motion for Sanctions for Violating Automatic Stay* ("Turnover Motion") contemporaneously herewith this Motion.

15. Upon approval of this Motion and the Turnover Motion and receipt of the Suspense Funds, the Trustee proposes to pay the following expenses and hold the remaining balance of the Suspense Funds in her Trust Account, only to be disbursed pursuant to further Order of the Court –

    a. Georgia Power (electricity) - $2,275.00 for past due amounts (or a deposit) and not more than $750.00 per month for future service until the Property is sold;

    b. City of College Park (water, sewage and trash) - not more than $250.00 per month for future service until the Property is sold;

    c. Nationwide/Trustee Insurance Agency[4] (to be supplemented by Notice prior to the hearing on this Motion) (insurance); and

    d. Not more than $5,000 for securing, repairing, cleaning, removal of junk and any abandoned items, and for miscellaneous maintenance, so that the Property can be

---

[4] The Trustee understands that Debtor's principal is in possession of the renewal notice for the existing policy which is approximately $10,000 (annual). The Trustee has also requested a quote from her insurance agent for Trustee related matters and expects to receive it later this week.

properly marketed for sale;

  e.  Trustee - $500.00 for a reimbursement in the same amount paid to Georgia Power toward the initial power invoice.

### **Relief Requested**

Section 503(b)(1) provides "after notice and a hearing, there shall be allowed administrative expenses…including the actual, necessary costs and expenses of preserving the estate." 11 U.S.C. § 503(b)(1)(A). Indeed, "Section 507 of the Bankruptcy Code gives first priority to 'administrative expenses allowed under [11 U.S.C.] section 503(b)' defined as including 'the actual, necessary costs and expenses of preserving the estate, including wages, salaries or commissions for services rendered after the commencement of the case.'" *In re Hostess Brand, Inc.*, 499 B.R. 406, 411 (S.D.N.Y. 2013).

The payment of the expenses listed in Paragraph 16 constitute costs and expenses necessary to preserve the Estate, which includes and primarily consists of the Property, under section 503 of the Bankruptcy Code. The combination of sections 363(b)(1) and 105(a) of the Bankruptcy Code and the necessity of the payments support the proposed payment of the expenses listed in Paragraph 16 and Court approval thereof.

(CONTINUED ON NEXT PAGE)

**WHEREFORE**, the Trustee prays that the Court enter an Order approving the payment of the amounts requested in Paragraph 15 of the Motion.

Respectfully submitted this 7th day of January 2020.

By: /s/ Anna M. Humnicky
Anna M. Humnicky
Georgia Bar No. 377850

Small Herrin, LLP
2727 Paces Ferry Rd.
Building 2, Suite 200
Atlanta, GA 30339
(P) (770) 783-1800
ahumnicky@smallherrin.com

*Counsel for Cathy L. Scarver, Chapter 7 Trustee*